UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**FONTEM US, LLC, ET AL.,**

   Plaintiffs,

v.                              **No. 4:26-cv-00322-P**

**UNITED STATES FOOD AND DRUG
ADMINISTRATION, ET AL.,**

   Defendants.

## OPINION & ORDER

Before the Court is Defendants' Motion to Transfer. ECF No. 21. Having considered the Parties' briefs and applicable law, the Court finds the Motion should be and hereby is **GRANTED**. Accordingly, the Court **TRANSFERS** this case to the United States District Court for the Middle District of North Carolina, Greensboro Division.

## BACKGROUND

Plaintiff, Fontem, US, LLC filed suit—and now seeks an emergency stay—challenging the Food and Drug Administration's intermediate decision to issue a "refuse to file" letter in response to Fontem's "Premarket Tobacco Product Applications." In short, the letter simply informs Plaintiff that its application needs more information prior to review. Fontem seeks authorization to market synthetic nicotine pouch products in the United States. While the FDA asserts that it needed more information about the product's ingredients in its application to conduct a proper scientific review, Fontem counters that the FDA needed to either approve or deny the applications under the Administrative Procedure Act.

Filing alongside Fontem is Co-Plaintiff, OM Investment, LLC d/b/a "Andy Food Store" gas station and convenience store in Fort Worth, Texas. That single store is the nexus of any connection to Fort Worth in

this case. Fontem, meanwhile, operates as a manufacturer and marketer of nicotine pouch products primarily out of Greensboro, North Carolina. In its relationship with "Andy Food Store," Fontem maintains some employees in this District to sell its products.

The government has now filed a motion to transfer the case to either the Middle District of North Carolina, the District of Maryland, or the District of Columbia. First, it argues that because Co-Plaintiff OM Investment, LLC lacks standing—which would render venue in this district improper—transfer is appropriate under 28 U.S.C. § 1406(a). Alternatively, it argues that transfer under 28 U.S.C. § 1404(a) is appropriate. With concerns regarding the propriety of venue in the Fort Worth Division of the Northern District of Texas, the Court ordered expedited briefing on the issue. Having received full briefing, the Motion is now ripe for review.

## LEGAL STANDARD

A district court may transfer any civil case "[f]or the convenience of the parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Such transfer is between venues, not forums. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 308 n.2 (5th Cir. 2008) (en banc). "It is well settled that the party moving for a change of venue bears the burden" of demonstrating good cause for why the forum should be changed. *JTH Tax, LLC v. Yong*, No. 4:22-CV-01008-O, 2023 WL 5216496, at *2 (N.D. Tex. Aug. 11, 2023) (O'Connor, J.) (internal quotation marks omitted). To carry that burden, the defendant must show that the transferee venue is "clearly more convenient than the venue chosen by the party." *In re Volkswagen of Am., Inc.,* 545 F.3d at 315. If the defendant does not meet this burden, then "the plaintiff's choice should be respected." *Id.*

When considering transfer of venue, the Fifth Circuit has identified eight factors, four private and four public, to consider.

The private interest factors are: (1) the relative ease of access to source of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing

witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive . . . .

The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*In re Volkswagen of Am., Inc.*, 545 F.3d at 315.

The plaintiff's choice of venue is "a factor to be considered but in and of itself it is neither conclusive nor determinative." *In re Horseshoe Ent.*, 337 F.3d 429, 434–35 (5th Cir. 2003). The weight accorded the Plaintiffs' choice of venue "is diminished where the plaintiff brings suit outside his home forum." *Santellano v. The City of Goldthwaite*, 3:10-CV-2533-D, 2011 WL 1429080, at *2 (N.D. Tex. Apr. 14, 2011) (Fitzwater, C.J.) (citing *Alexander & Alexander, Inc. v. Donald F. Muldoon & Co.*, 685 F. Supp. 346, 349 (S.D.N.Y. 1988)); *see also TransFirst Grp., Inc. v. Magliarditi*, 237 F. Supp. 3d 444, 459 (N.D. Tex. 2017) (Lindsay, J.). Courts use a two-step inquiry to determine if transfer is proper. *See In re Volkswagen of Am., Inc.*, 545 F.3d at 312. *First*, they ask whether the plaintiff could have originally sued in the transferee district. *Id. Second*, they weigh the aforementioned private- and public-interest factors to determine whether a venue transfer serves the convenience of parties and witnesses and is in the interest of justice. *Id.* at 315.

## ANALYSIS

As an initial matter, the Court assumes without deciding that this action could have been brought in either the Northern District of Texas or the Middle District of North Carolina.[1] A civil action against a government agency or officer in their official capacity may be brought in

---

[1] To be sure, Defendants' standing analysis appears meritorious to the Court. Because the agency action at issue here effectively resulted in a mere intermediate request for more information before meaningful review can be conducted, the Co-Plaintiff's harm appears to be far too attenuated from the government's action.

a "judicial district in which any defendant resides," "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," or where the plaintiff resides if no real property is involved. 28 U.S.C. § 1391(e). Here, the Plaintiff seeking approval of its application is Fontem, which operates in Greensboro, North Carolina. Compare this with the analysis for Fort Worth, where venue is mainly established through the operation of a single convenience store that wants to sell these yet-to-be authorized products. Since the Court assumes without deciding that this matter could have been brought in either District, the Court must now determine whether private- and public-interest factors weigh in favor of transfer under § 1404(a).

## A.  Private-Interest Factors

The private-interest factors to be considered are: (1) ease of access to sources of proof; (2) availability of compulsory process for witnesses; (3) the cost of witness attendance; and (4) all other practical factors that might make a trial more expeditious and inexpensive. *See In re Volkswagen of Am., Inc.*, 545 F.3d at 315.

As to the first three factors, this case will chiefly focus on the Administrative Procedure Act ("APA"), with little to no actual physical records or evidence necessary for its resolution. Thus, the first three factors are neutral with respect to transfer.

The fourth factor, however, is not neutral and heavily weighs in favor of transfer. Defendants argue that the Middle District of North Carolina is the more practical venue compared to the Northern District of Texas. The Court agrees. Fontem's personnel and materials are based in its North Carolina headquarters—the same personnel that amassed the materials at issue in the relevant application to the FDA. So it would clearly be more convenient for any hearing or meetings in this case to be held in North Carolina instead of Texas. While Fontem is the "master of the complaint" and itself chose to file suit elsewhere and thus put this inconvenience on itself, the ease with which it could appear in North Carolina would make litigation there more convenient and logistically more expeditious for all parties concerned. *In re Clarke*, 94 F.4th 502, 514–15 (5th Cir. 2024) (noting that it "abuses both logic and the court's discretion" to assume a "zero chance that the case would need any

evidentiary hearing") (cleaned up). And holding a trial in North Carolina would for the same reasons be clearly more convenient as well.

Notably, Plaintiffs do not identify any substantial or practical issues with this case being held in North Carolina. The Court concludes that, because most of the private interest factors are neutral or weigh in favor of transfer, the private interest factors as a whole favor transfer.

## B.  Public-Interest Factors

Next, the Court must consider whether public-interest factors weigh in favor of transfer. These public-interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *See In re Volkswagen of Am., Inc.*, 545 F.3d at 315. The latter two factors are neutral. But the remaining public factors move the needle toward transfer.

*First*, it is well-documented that the Northern District of Texas has a significantly busy docket. For one, this Court recently held a high-profile trial regarding the shooting at ICE's Prairieland detention center last year, a trial that encompassed nearly four weeks of this Court's time. But that is just one case. The Northern District of Texas is generally more congested than the Middle District of North Carolina. *See* United States Courts, Federal court Management Statistics: Judicial Caseload Profile (June 30, 2025), https://www.uscourts.gov/sites/default/files/document/fcms_na_distprof ile0630.2025.pdf. As of June 30, 2025, the Northern District of Texas, had 522 pending cases per judgeship and 6,259 pending actions total, while the Middle District of North Carolina had 374 pending cases per judgeship and 1,497 pending actions total. So the judicial economy favors transfer. Indeed, the Northern District of Texas has a docket busier than some of the busiest courts in the country. *See Chamber of Com. of the U.S. v. CFPB*, 735 F. Supp. 3d 731 (N.D. Tex. 2024) (Pittman, J.) (mentioning that the Northern District of Texas has a busier docket than the District Court for the District of Columbia); *Perez v. Genoptix, Inc.*, No. 4:19-cv-00309-O, 2018 WL 11435300, at *3 (N.D. Tex. Nov. 6,

5

2018) (stating that to assess relative court congestion between districts, courts may analyze federal judicial caseload statistics when determining whether to transfer); *see also Outsourcing Facilities Ass'n v. United States Food & Drug Admin.*, No. 4:24-cv-00953, 2025 WL 1782574, at *1 (N.D. Tex. Mar. 26, 2025) (noting that the Fort Worth Division is up to two to three times busier than the Dallas Division). Considering Plaintiff seeks expedited relief, this factor especially favors transfer.

*Second*, there is a localized interest in having this dispute resolved in the Middle District of North Carolina. The Court acknowledges that this lawsuit ultimately seeks approval for nationwide marketing of a product. But this factor still weighs towards transfer.

The success of a North Carolina company clearly pertains to North Carolinians. As the Fifth Circuit has said, this factor concerns non-party citizens. *In re Chamber of Com. of the United States v. CFPB*, 105 F.4th 297, 308 (5th Cir. 2024). Localized interests are present when "the citizens of the forum have a sufficient interest in the controversy to justify burdening them with jury duty." *Id.* (cleaned up). "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Id.* (cleaned up). It is hard to think of a more concerned community than a community with neighbors that work for Plaintiff's headquarters.

While this case concerns an agency action—a category of actions that often can be more fittingly characterized as having national interests rather than localized interests—this action does not concern a general rule applying to a wide array of companies. This concerns a very specific application filed by one particular company in North Carolina seeking approval of its product. Any remaining effects on retailers are attenuated and miniscule in comparison. So the fact that an agency conducted this action does not automatically shield it from any inquiry into venue.

As this Court has consistently emphasized, venue is not a continental breakfast; you cannot pick and choose on a Plaintiff's whim where and how a lawsuit is filed. Indeed, this is why § 1391(e)(1)(B) has the "substantial" qualification as one of the factors in deciding venue.

Federal courts have consistently cautioned against such behavior. *See Moreno v. City of N. Y.*, No. 14-cv-6062(NG), 2015 WL 403246 at *2 (E.D.N.Y. Jan. 28, 2015) (Gershon, J.) (holding that a court's discretion under 1404(a) is properly exercised to discourage venue shopping). Plus, the Middle District of North Carolina clearly has the stronger interest in resolving this dispute.

Here, there is no unique or particular impact felt in the Northern District of Texas and little if any of the events surrounding the FDA's intermediate decision have occurred here. Importantly, while the third and fourth factors are neutral, they (like all other private- and public-interest factors) certainly do not favor this case remaining in the Northern District of Texas and instead favor transfer to the Middle District of North Carolina.

## C. Local Rule 62.2

Lastly, the Court determines that a stay of transfer would disrupt a just and expeditious resolution of this case. In September 2024, the Northern District of Texas updated its Local Rules to require a 21-day stay following any contested transfer order outside of the Fifth Circuit. N.D. Tex. L.R. 62.2. But under Local Rule 83.1, and "[n]otwithstanding the local civil rules, a presiding judge may direct the parties to proceed in any manner that the judge deems just and expeditious." N.D. Tex. L.R. 83.1. An additional 21 days—particularly in a case seeking emergency relief—is not necessary, expeditious, or just.

The Court questions the legitimacy and practicality of Local Rule 62.2 (the "Rule"). In terms of legitimacy, the ostensible reason behind the Rule is to allow the *de facto* appellate review of a district court's decision to transfer a case to another circuit. But jurisdiction of federal courts to exercise appellate review is established by Congress and the United States Supreme Court—not the district courts, or even learned circuit courts, through local rules. The current venue statutes, 28 U.S.C. §§ 1391, 1404(a), 1406, and 1631 say nothing related to a district court needing to stay a case following a transfer order to another district, for any amount of time. In fact, 1404(a) is so broad that it allows transfer to "*any other district or division* where it might have been brought." 28 U.S.C. 1404(a) (emphasis added). And courts have long enjoyed "broad

7

discretion in deciding whether to order a transfer." *In re Volkswagen of Am. Inc.*, 545 F.3d at 311. While the venue statutes have been enacted for decades, and Congress has had ample opportunity to amend them, the Rule seemingly circumvents that process with a substantive rather than procedural revision. "That is wrong coming and going." *Evans v. Garza*, 161 F.4th 315, 325 (5th Cir. 2025) (Oldham, J., dissenting)

As for practicality, the Rule forces district court judges to prioritize certain filings over others. For example, if a temporary restraining order and motion to transfer are filed at the same time, a judge may be forced to rule on the request for a restraining order given the 21-day waiting period the parties must endure—notwithstanding a clearly improper venue. And although the Court resorts to Local Rule 83.1 in this Order to avert the 21-day stay for the Parties' interests, it is clear that Local Rule 83.1 and this Rule are inconsistent. Moreover, the Rule necessarily infringes on a district court's charge to manage its own docket. *See Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962) (holding that trial courts possess inherent power to "manage their own affairs so as to achieve an orderly and expeditious disposition of cases").

Accordingly, notwithstanding the local rules, the Court has determined it is just and expeditious to **immediately** transfer this case to the Middle District of North Carolina and directs the clerk to transfer the case without delay.

## CONCLUSION

The most proper venue in this case is the Middle District of North Carolina. The connection to this District is a mere convenience store and a few employees that work in this District. In comparison to the connections that Fontem's headquarters has to the Middle District of North Carolina, it is clear that North Carolina is the more convenient venue. Here, the Court will refrain from taking part in "creative judging" and is compelled to follow the law laid out by Congress in 28 U.S.C. § 1404(a).[2] Thus, having considered the relevant private- and public-

---

[2] "One single object… [will merit] the endless gratitude of the society: that of restraining the judges from usurping legislation." *Letter from Thomas Jefferson to Edward Livingston* (Mar. 25, 1825), in 16 THE WRITINGS OF

interest factors, the Court concludes that this case should be and hereby is **TRANSFERRED** to the United States District Court for the Middle District of North Carolina, Greensboro Division.

**SO ORDERED** on this **23rd day of March 2026.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

---

THOMAS JEFFERSON 112, 113 (Andrew A. Lipscomb & Albert Ellery Bergh eds., 1904).